motor company, Mr. Mayer. Mr. Mayer. Thank you, Ronald. Good morning, and may it please the court. Finding of inequitable conduct in this case should be reversed, at least because the district court committed clear error in its finding of intent to deceive, and it did that in multiple respects. We know that the district court found by inference that Mr. Obradovich, the named inventor, had certain information that the court later found to be material. The district court then, on top of that, found by inference that Mr. Obradovich believed that information to be material. And finally, found by inference, the fact that Mr. Obradovich made a deliberate decision – Mr. Mayer, do you agree that Mr. Obradovich was aware of certain operational details of the 96 RL navigation system? We don't, Your Honor, and for a few reasons. The district court largely relied on certain facts and activities of others at the company, and essentially imputed all of that to Mr. Obradovich. To others with whom he was driving around in the car? There is also the drive in the car, Your Honor. Mr. Obradovich, for between 30 to 60 minutes, did drive in the car with two of the co-inventors, and this is about six months prior to the filing of the application. Of course, there's no evidence that at that time Mr. Obradovich observed every screen and functionality in this car. Some of the functionalities that Honda has relied on as material are beep sounds, small highlighting portions, minutiae of the operation of that car. What we do know of that time frame is what Mr. Obradovich believed his invention to be, and we know that by virtue of corroborating documents, his own handwritten notes from that time suggest that in his mind, his invention was about a command and control system for a vehicle. It had nothing to do with navigation, and so we don't believe it's a foregone conclusion that as of the time that he sat in that car, that Mr. Obradovich would have observed all of these functionalities, or even take a note of them, and had them register in his mind as somehow bearing on what he believed. With Quinn's consent, isn't this just ordinarily a credibility dispute when we give defense to the district court? And this district court judge lived with this case for many, many years. There were numerous proceedings before him, and he did make certain credibility determinations. Now, a lot of district courts are reluctant to just say people are lying, and so sometimes  It seems to me here that everybody agrees circumstantial evidence is what we're left with in most of these cases, and it seems to me, and so I want you to explain to me why I'm wrong about this, that given a deferential standard, there was enough here. Why wasn't there enough here for the district court to reach the conclusion he reached? Well, in the first instance, the only credibility finding that the district court expressly made is in footnote three of the findings, and there the district court supposedly said that it was incredible when Mr. Obradovich testified that he had not seen these photographs before. Yeah, but he also, I mean, credibility, we can call it what we like, he made statements at other parts of his decision reviewing the testimony that he was not being completely candid with regard to having possession of the navigation manual. So I put those under the umbrella of credibility determinations, too, right? Well, the only problem with respect to those credibility findings, Your Honor, those were credibility findings made in an earlier order that was since vacated by the federal circuit, and so whether those are even more of the case at this point or can be relied on, certainly Honda relied on those in its briefing, but the district court in its findings and ultimate conclusion of inequitable conduct that's on appeal never relied on any of those credibility findings. The only credibility finding that the district court expressly made is one with respect to these photographs. Once a judge determines that somebody's not credible, can the judge not carry forward that knowledge? Well, Your Honor, we think that the judge needed to make a complete analysis of inequitable conduct here, and in doing that, needed to look at each of the three prongs of the Theracent's intent analysis and provide evidence and analysis for each, and he at least in the words of his order did that. But the problem is that with respect to these credibility findings, at best, and this is very similar to the federal circuit's decision last year in the first media case, at best what we do then is we take the credibility findings, the district court can discredit that testimony to the extent that he believes it's appropriate, but then he must look at the rest of the record. He can't simply rely on credibility findings alone. That's effectively what he did here. He relied on credibility findings in addition to the fact of the withholding. But you had told me a few minutes ago that he only made one credibility finding in the footnote, and now you're telling me that he relied entirely on credibility? I'm not clear on what you're saying. Well, Your Honor, he only made one specific credibility finding in that footnote, but to the extent that if we were to accept that there were implicit credibility findings because he found intent to deceive, because he made findings that contradicted Mr. Obradovich's testimony. So if we were to accept that, at most that's what the district court did, is took those implicit credibility findings. So are you conceding that if your opposing counsel can point to something other than simply credibility findings that you lose? We're not, Your Honor, because the reality is that when we look at each of these prongs of the Therosense test, there needs to be clear and convincing evidence, and we just don't think it was there in any respect. We think that there were inferences that were improperly drawn. They were drawn based on incorrect factual findings that are directly contradictory to other facts in the record. Can I just ask you, I first understood and I think misunderstood what the theory of your case was. So I just want you to clarify, because when I first saw that, I took it to be, he's got a disclosure here. It was up to the examiner or other people to run and do it. His defense is that, what do you mean I was hiding it? I had an intent to deceive. I specifically referenced the navigation system and the spec. It seems to me that's not at all what your argument is. Your argument is almost the reverse of that, which is just because he cited this navigation system, he had nowhere in his mind that there was any relevance at all to any of this to what he invented. Do you understand my question? I think I do. Can you point me out on what your theory is here? I think I do. The disclosure of the navigation system here is important because it makes this case somewhat unique in respect to other inequitable conduct cases where there's a nondisclosure entirely of a prior art reference. Here it was disclosed, and it was disclosed as a starting point into which the inventive system would be built. And all of that is corroborated. But is your view of that that therefore he should be off the hook because he couldn't have possibly intended to deceive because he pretty much pointed people in the direction that maybe he ought to look at this differently? That's not your theory. No, it's not, Your Honor. That alone does not get Mr. Obradovich off the hook. But the point is, if that alone is all we have, that's not enough to meet the clear and convincing standard that he believed that information to be material or, quite frankly, that he even had some of this information in the first place. Yeah, but the district court didn't rely exclusively on the fact that he cited it in the spec as a basis for determining that he knew it was material, right? No, you're right, Your Honor. The district court relied on other circumstantial evidence. The problem is, and if we start with that, that's the starting point, this question of what information did Mr. Obradovich have at the time? And is that evidence, which is, hey, these are exactly the same word for word, is that purely circumstantial or is that direct evidence? Regardless of which it may be, Your Honor, and it may be that you can argue that that is more than circumstantial evidence, but it's not evidence that Mr. Obradovich had these materials. And that's the problem. This factual background is such that Mr. Obradovich was the president of a company. He had an idea and he delegated to his employees, he hired a software engineer, delegated to a team of employees this task of building a prototype of his invention. Now the evidence only has Mr. Obradovich in this car for 30 minutes on a first test drive. And that's where the judge didn't believe it. But he doesn't have to just believe Mr. Obradovich, and that's an important point. There's testimony by the two co-inventors. There's testimony by Mr. Rachel. There's testimony from the patent attorney, Mr. Yip, all of which supports our theory, and none of which was ever questioned by the district court. The district court did not question the credibility of any of these people other than Mr. Obradovich. But when you say supports your theory, I must say I share the conception, the view that Judge Proust has mentioned. I thought your case and your strong case was, well, we mentioned it in the specification. What difference does it make what he had in his mind when he developed the invention? He refers to it. He says, this is what I built on, this is an improvement on the, he identifies it specifically by model number and all else. But I don't hear you arguing that how can it have been concealed when it's in the patent application, the patent, whether he knew about it or not. I think you are distancing yourself from that argument. Not only, not breaking it, but distancing yourself. I don't mean to distance myself from that argument at all. We do think it is an important point that he told the patent examiner about this car, about this navigation. Not that he told him. It's actually in the patent document. That made an impression on me. It doesn't seem to be anything that you're relying on. No. To be clear, Your Honor, we are relying on that. The fact that that evidence is that Mr. Obradovich, someone who was completely inexperienced with the patent system, he was a first-time inventor, thought that he met his disclosure obligations. He thought that he disclosed the thing that was prior art, and he thought that he disclosed his invention as being something different from that. And so we agree that that's evidence in the first instance. The problem is that Honda makes the argument that, well, there are certain other information about that car that Mr. Obradovich either knew or should have known about. They say it was in the owner's manual, so he should have given the patent office the entire owner's manual. But in terms of materiality, I really don't hear your saying, how can it have been clear and convincing evidence of materiality when it's in the patent itself? With respect to the materiality issue, no, Your Honor, I don't think that's what we're saying. I think what we're saying is the way that it's disclosed and described in the patent application tells us what was in the mind, because it's important to understand what was in Mr. Obradovich's mind, what was his view on materiality as part of the intent analysis. Well, that's more difficult, isn't it? Here we have a trial judge who observes the witnesses and says, I think he's lying. And says it was selective. Some things he gave and some things he withheld. We do, Your Honor. The problem is that we have a trial. He do what? I'm sorry? He do what? I said the judge says it was selective. We have the judge saying those things. I agree. The problem is that the judge is saying these things based on the supposed credibility findings at best. But there's no other evidence. And that was the first media case, which said that even if we have information that's in the hands of the inventor, information that the inventor believed it to be material, there must be separate evidence and proof of that third prong, that there was a deliberate decision made to withhold evidence, withhold the information. We just don't have any of that in this case, aside from potentially credibility. I don't want to repeat myself, but I want to be sure that you're not arguing that since it was in the patent application, how can it have been withheld? I can't make that argument, Your Honor, because Honda's counter-argument, I suppose, is that there's certain information about that car, short of driving the car down to the patent office and giving it to the examiner. He didn't disclose everything about that car, and I must concede that. He certainly disclosed the fact of the car. And also it's inconsistent with what I now understand to be your theory is, he had no clue, at least in his mind, that there was a relationship between the navigation system and anything that was going on in his specification. So your argument is kind of the opposite, that Judge Newman and I both sort of alert you to the fact that we understood a different theory, at least initially. In a sense, that may be right, Your Honor. Can I ask you... I'm sorry. Please. No, go ahead. I was just going to follow that and say that we do think it's important that he disclosed it, but disclosed it in a way, in the patent, and in corroborating documents at the time that suggest that he didn't think anything else about that car was relevant to his invention at all. All right. Let's save some rebuttal time. Thank you, Your Honor. Mr. Hilton? May it please the Court. Good morning, Your Honor. I'd like to just touch on two points that were raised in the questioning of counsel. One is this issue that he did disclose the existence of the car and talked about the faceplate and so forth, and this was a foundation for his invention. But our view of it is that this is a classic partial disclosure of the type that took place in the SEL case, the sort of partial disclosure that, in first media, the Court said was not a good thing to do and distinguished the prior case, not Adventus. Yeah. I mean, I guess that's the difficulty I have with that argument, which is what I glommed on to initially, which I guess is what your friend has said he wasn't pursuing. But just, I mean, sort of hiding in plain sight kind of thing takes a tremendous amount of sinister sort of intent to suggest, if that's what you're suggesting, that he kind of knew there was a relationship, knew it was material, and figured by kind of embracing a piece of it, he would steer people, including the examiner, away from looking at it anymore. That seems to me a little far-fetched. Well, let's look at what he said in the patent about the system, though. He talked about how the navigation system interacted with satellites and so forth. He mentioned the model, the 96RL. He says it's an improvement. He did. It is concealed. But then he described the three-status system, and he described the search system in there that were, as the court found, remarkably similar to what he found in the manual. And yet he never told the examiner that he'd gotten that from the 96RL. So you have the juxtaposition of saying, here's a nav system that interacts with satellites, and I'm going to make an improvement on it, and my improvement is this three-status system and this search system, which he knew he got out of the manual. Can I ask you something, just as an aside? I don't want to interrupt your thought, but I want to make sure I get to this question before time runs out, which is, with regard to the validity claims, the obviousness claims, and this goes in part to the question of materiality involving equitable conduct, the jury found that, at least with respect to the three patents, so one patent's off the table because it's anticipated, but on the other two patents, the jury found they were not invalid. And you didn't appeal that finding. Now the judge, in his analysis on materiality, kind of says those are obvious, but why didn't you appeal those questions? Your Honor, we did. Our appeal is still inchoate there. What happened is that we filed a JMAL motion on that very issue, and the judge simply said, I'm not going to deal with it now, it's moot, because he found the inequitable conduct. So he dismissed those claims as moot, given the equitable conduct? He dismissed our JMAL. But if this case stays alive, we're back there. That's the real question. I couldn't quite figure it out. I thought only final judgments were appealable. You're saying this is not a final judgment? Did you get 54B? How did we get that? I haven't thought about that issue in a long time. But if he dismissed those other claims because he said they were moot, did he dismiss them without crediting it? I apologize, I've just forgotten what the exact procedure was, but what I do know for sure is that our position on that, on the jury findings of validity of not invalid and infringement, are still alive if the case has to go back. So they presumably would dismiss without credit? It can't be still alive, really alive, because then, as Judge Newman pointed out, there'd be a problem on final judgment in the absence of 54B. Thank you. Pursuant to Rule 58 of the Federal Rules, the Court enters final judgment. I'm sorry, I don't see where your question is answered in there. I apologize for not being able to give you the answer. It might be that it would be helpful. Do you think there's some separate briefing on this point as to whether this judgment is final or not? We'd be happy to submit it. Maybe the other side has an answer. I don't think you'd disagree with it. I believe, Your Honor, that that invalidity claim was dismissed without prejudice, and that's why there's potentially a J-multiple pending. But that's why you're not disputing that there's a final judgment here? That's right, Your Honor. If that's confirmed, then let's proceed. Again, what was missing in the disclosure was all the information that mattered, and yes, I suppose the examiner could have gone out and gone to a dealership and looked at the 96 RL, but that's not the way... He referred to it. It's in the public literature. If it's something that the office needs to look at, they look at it. It's very hard to say that there was any concealment that this was viewed as an improvement on that system. Well, here's the way we see it, Your Honor. It's right there in the patent. It isn't something that was in prosecution or referred to in a communication to the examiner. It's right there on the public record. It's there on the public record, but here's the scenario that the judge saw and that we think is conclusive on this. The judge found that Mr. Obradovich wrote the specification, and that finding really can't be challenged because... Well, that helps him if he actually said, this is an improvement on the 96 RL. If he put it in the specification that he wrote, how can he have concealed it? But the judge also found that there was overwhelming evidence that Mr. Obradovich used the manual in writing the patent application. That's what one does, is it not? But when you take a manual... But he's claiming that as his improvement. He's claiming what he found in the manual as his improvement. And that's the heart of the problem here, Your Honor. You're saying that it's in the prior art and therefore invalid. The issue here is whether there was deliberate and intentional concealment of material information by clear and convincing evidence. And as you can see, I'm having trouble with finding clear and convincing evidence of concealment of something that was in the specification. What we have here, Your Honor, is a man, there's no evidence whatsoever that he ever conceived of this invention before he saw the 96 RL. So he didn't have an invention, Your Honor. He says this is prior art, I have an improvement. Okay, but his improvement was simply to repeat the prior art. He took the prior art, he put it into his application as his own, he called it an improvement, but it was the prior art, and he then claimed it as his own. And he didn't tell the examiner that that's what he was doing. He wasn't claiming the satellite system. No, he was claiming the other features, the three-status feature, which he'd found in the manual, which he copied into his application right down to the colors that was used for the three statuses. He copied the search system into his patent. He claimed both of those as his own, as his improvements, when in fact, he knew that he had copied those out of the manual. And he'd never thought of them before he got the manual. So to me, that's very different than a situation where somebody makes an invention on their own, then they happen to come across a piece of prior art. That's not the situation at all. This guy was a plagiarist. He copied somebody else's work and passed it off as his own. Can I ask you a general legal question about this Theracent standard and the single most reasonable inference? How does that play, if at all, in your view? How are we supposed to evaluate the single most reasonable inference issue in connection with credibility findings? Are they inextricably intertwined, and therefore you have to take the credibility as given, if we're going to defer to that, and then inquire on the single most reasonable inference? Here's the thing, Your Honor. If you had a credibility finding that was the guy told a lie about something, but it wasn't a lie about the central issue in the case, then there'd be a question. How do you relate those two? But here, the credibility problem was as to the specific issue. The credibility was that he denied that he had the manual, and the court found that he did Was that an explicit denial? Absolutely, Your Honor. Now, the manual is a published public document. Yes, it is, Your Honor. Therefore, isn't there an obligation during examination to review, to search for and review the prior art? There is certainly an obligation on the part of the applicant to assure that the closest prior art is before the examiner, lest there be a mistake in examination. But he does more than telling the examiner that this system exists. He actually puts it in his patent application. What he puts in is misleadingly incomplete information. He tells about the satellite system, but he knows that he copied from that prior art and actually got his idea from the prior art. He had never thought of it until he saw the prior art, and he didn't make an improvement. He took the prior art itself, put it into his application as his own. Based on his disclosure, there's a limited disclosure in the spec, is it your position that there's no way that any reasonable examiner would say, oh, he cited the navigation system, we ought to ask him more about that or we ought to do our own search? Or is it your view that whatever he said about the navigation system was so discreet and so disassociated from what was inventive here that it wasn't a disclosure that would prompt the examiner in any way, shape or form to do further research? I firmly believe in the latter view, Your Honor. Talking about, here's a system that communicates with satellites has nothing whatsoever to do with these other features that he copied from that piece of prior art. And is your understanding of the other side's argument that their argument is not that different from what I articulated? They are saying, too, is that your understanding, that the reference that he made with regard to the navigation system in the spec is separate and distinct from what we're talking about here? I don't think there's any dispute about that. It's indisputable. It hasn't got the slightest thing to do with having three statuses of different colors to select options from a screen on the dashboard. What has that got to do with satellite communication? I'd like to make one other point, if I could change the subject slightly because I don't want to lose it. Mr. Mayer stood up here and said, well, he thought his invention had nothing to do with navigation. The interesting thing is that there's navigation all over these patents. And in fact, if you look into the 497 patent and look at Claim 16, it claims the application of his copied invention to navigation. Claim 16 is a dependent claim to navigation. He totally understood that the prior art was directly related to what he then copied and claimed as his invention. He says, yes, I claim my shortcuts and my various procedures as applied to this Honda navigation system. It doesn't say I claim I invented the Honda navigation system. No, but he claimed that he invented those shortcuts and systems and they were already in the Honda system. They were already there. They were in the manual. He copied them from the manual. Then it would be invalid for prior art. I'm trying to find the inequitable conduct. The inequitable conduct, Your Honor, is that he knew he had copied this claimed invention from the prior art and he told the examiner some unrelated story about that piece of prior art, which if it did anything, it caused the examiner to think, well, I don't want you to look at that. And he then claimed what he copied as his own invention. It seems to me that what the judge is saying is that Mr. Abramovich could not have not copied it. He had to have copied it. Because he had never conceived it. Of course. That's the whole point. He didn't make this invention. He didn't make improvements on the prior art. All he did was he saw the prior art and he decided, well, I'm going to put that in my patent application. I won't tell the examiner that I got it from the prior art. I'll tell him that this car exists, but not that that's where I got my information. And then he claimed it as his invention. That's the whole story. That's inequitable conduct. Any more questions for Mr. Hillman? Thank you, Mr. Hillman. Mr. Mayer. Thank you, Your Honor. To follow up on a question that Judge Post posed on the single most reasonable inference question, an important fact about this case is that there was a jury finding of no inequitable conduct. It was an advisory verdict, and so not binding on the district court. But if nothing else, that jury verdict indicates that eight jurors unanimously concluded that there was no inequitable conduct here. And what does that do? Well, that confirms that there must have been another reasonable inference to be drawn from the record here. And that's an important part of our arguments. Also, as to this SEL case and the selective disclosure point, we do think Honda's theory is far-fetched because it does require such not only sinister activity ten years prior on behalf of this inventor, but it requires that he was so adept in patent law issues, so adept in the system, that he would have known about trying to throw off the examiner. He might have known about a way to game the system by disclosing some portions and not others. Can I ask you about your first point, though? So is it your view kind of as a matter of law if a judge, and I can't recall seeing another case where the question of inequitable conduct was submitted to the jury for an advisory opinion, but be that as it may, that it's sort of as a matter of law, therefore he can't enter a judgment on inequitable conduct if there's been a jury advisory opinion contrary? I don't know that we need to go that far. I agree with Your Honor that this is the only case in which we found, and where these facts came up, where a jury rendered an advisory verdict of no inequitable conduct, and then a district court went the other way, certainly post-Saracen specifications. Well, so if you're saying it's not as a matter of law that we could not find inequitable conduct, what are you saying we should do? Weigh it as one of the factors? I do think, Your Honor, that the district court at least should have considered that when he was considering if there were any other reasonable inferences. The fact that the jury here, even under a pre-Saracen lower standard for inequitable conduct. Well, obviously he considered it. He knew it went down. He sat there for the entire time. He must have factored it. Of course he considered it. Well, he didn't address it anywhere in his analysis. Yeah, but of course he knew about it and he considered it, right? Well, we think at a minimum based on that, and all these other facts in the record, that there really was another inference that could have been drawn. And that therefore, if there was one other reasonable inference that could have been drawn from this record, that that was clear error to infer intent to deceive. And we think that the jury verdict is important evidence of that. There's also the issue of this selective disclosure. In the SEL case, the inventor who was found to have selectively disclosed portions of the prior art had been the named inventor on 1,500 patents of his company. And both the district court and the federal circuit in that case found it important that that inventor had had immense experience in patents and that he was therefore equipped to make decisions in sort of a very sinister way to try and game the system. This was Mr. Obradovich's very first experience with the patent office. And so to attribute that kind of knowledge to him is, we think, at least far-fetched. On the issue of these striking similarities and the finding by the district court that Mr. Obradovich must have copied from the manual, we think that that's wrong, Your Honor. Mr. Yip testified, this is a patent lawyer, testified that he actually drafted the patent application. And of course, we believe it's pretty far-fetched to assume that Mr. Obradovich, someone who the evidence doesn't even indicate he had ever seen a patent application before, that he picked up and wrote these patents himself is, we think, far-fetched when we have the patent lawyer testifying, no questions as to his credibility, that he wrote the patent. And so the whole analysis falls apart when we replace Mr. Obradovich as the author of the patent with his patent lawyer, which makes more sense, we believe, on the facts. I believe I'm past my time. You are indeed. We've listened to both of you with interest. Thank you. The case is taken into submission.